UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**ERIEN LOIS FRAZIER,**
*Plaintiff.*

vs

**EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANS UNION
LLC; EQUIFAX, INC.**
*Defendants*

Case No. 1:18-CV-00068-GLR

**TRIAL BY JURY DEMANDED**

## PLAINTIFF'S OPPOSITION TO EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff, Erien Frazier, hereby submits her opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") with prejudice. Plaintiff's SAC not only meets but exceeds the standards governing the form of a complaint contemplated by Federal Rule of Civil Procedure 8(a). The SAC also sufficiently alleges Defendant's willfulness that caused Plaintiff's harm. Accordingly, Defendant's motion should be denied.

### BACKGROUND

Plaintiff made three very detailed and specific requests for her <u>full consumer file disclosure</u> under 15 U.S.C. § 1681g(a)(1) in an effort to obtain and review ALL information that Experian had in its files relating to her as a consumer. ECF No. 32 ¶¶ 21, 23, 33-34. Plaintiff received credit reports, which were not responsive to her requests. The FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll

information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). Plaintiff's request was a very unambiguous and straightforward request made under the law.

Defendant, nevertheless, argues that Plaintiff's SAC is "legally defective" for two reasons. One, Plaintiff failed to show that Experian "willfully" violated the FCRA and was reckless, and two, Plaintiff cannot show standing because her SAC does not identify a concrete harm. Defendant argues that Plaintiff needed to point to some authority that clearly establishes "that § 1681g requires the disclosure of obsolete information." But Defendant misconstrues Plaintiff's allegations. Plaintiff simply requested all allowable information in her consumer file, as outlined and mandated by law, and Defendant failed to comply with those disclosure requirements, which is a violation of the law.

## **STANDARD OF REVIEW**

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A Plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

Well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most

favorable to the plaintiff. See *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7.3d. 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty, Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).

Courts generally should hold pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers," they may nevertheless dismiss complaints that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Turner v. Kight*, 192 F.Supp.2d 391, 398 (D.Md. 2002), aff'd, 121 F.App'x. 9 (4th Cir. 2005).

## ARGUMENT AND AUTHORITIES

### A. The Second Amended Complaint Fails to State a Claim That Experian Willfully Violated the Fair Credit Reporting Act.

Defendant states that in order for it to be found willful of violating the FCRA, "Plaintiff must plausibly allege that Experian knowingly and recklessly disregarded the FCRA's requirements." Plaintiff's SAC has done just that by alleging that the Defendant repeatedly violated the law by failing to comply with Plaintiff's lawful request for her full consumer file disclosure. (SAC ¶¶ 22, 24, 35). Plaintiff's exhibits show what she received and how the Defendant responded.

### 1. Under the FCRA, Willfulness is a High Standard that Requires a Knowing or Reckless Violation.

Defendant notes in *Safeco Insurance Co. of America v. Burr*, "the Supreme Court analogized the FCRA's willfulness standard" to "the requirement in qualified immunity cases, reasoning that an FCRA violation can be willful only if the defendant engages in conduct that is clearly

unlawful under then-existing law." Plaintiff has alleged Defendant's "clearly unlawful" conduct in her SAC. In its attention to the issue of willfullness, the Supreme Court's observation was that "'willfully' is a 'word of many meanings whose construction is often dependent on the context in which it appears, and where willfulness is a statutory condition of civil liability." Further, the Court said that "[w]hile 'the term recklessness is not self-defining,' the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard." *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007). The "objective standard" in this instant case is § 1681g(a)(1) and the July 2011 FTC Report with Summary of Interpretations. Defendant provides a partial quotation of what the FTC said that is misleading. But Plaintiff will reiterate Section 609—Disclosures to Consumers, paragraph three which states, "A CRA is required to make the consumer disclosure regardless of whether it designates its records as 'files' or 'archives' or use any other terminology for the information it retains on a consumer." In addition to that, paragraph five states that "A CRA that provides information to an intermediary that will resell the information to a third party must disclose the name of the third party to the consumer as part of its file disclosure." Plaintiff makes reference to this in her SAC. ECF No. 32 ¶ 5. Plaintiff attaches an additional exhibit concerning these intermediaries and third parties (information that should have been disclosed by Defendant). See Exhibit A.

Experian's willfulness is obvious in the credit reports they sent to Plaintiff. On the first page of the September 2017 credit report is the statement: "To assist you in understanding your correction summary, we have provided additional information that relates directly to items on your personal credit report." See Exhibit D under seal. On page three of the same report, the first sentence reads: "Our reinvestigation of the dispute you recently submitted is now complete." See Exhibit D under seal. Plaintiff did not request a credit report, a correction, or reinvestigation of

any item on her credit report but the Defendant responded to Plaintiff as if she had. Defendant could have easily written that what they had provided was the complete contents of her consumer file but they did not do that. They instead pretended to produce a report that addressed a reinvestigation of a mythical dispute. Defendant's misrepresentations can lead one to reasonably conclude that they were not just willful but reckless violations of the FCRA's consumer file disclosure requirements. See *Pinner v. Schmidt*, 805 F.2d at 1263 Court of Appeals, 5th Circuit 1986.

## 2. Plaintiff's Allegations Do Not Rise to the Level of a Knowing or Reckless Violation; They Do Not Allege a Violation at All.

Defendant is taking an absurd position. In *Safeco v. Burr*, the Supreme Court took the position that it must examine the adverse action first to determine if the appellants' conduct was willful and reckless. They reasoned that an unintentional mistake that caused a violation would not be willful or reckless. The Court had earlier observed that "a company would not be acting reckless if it 'diligently and in good faith attempted to fulfill its statutory obligations.'" Here, the Defendant cannot claim that it exercised diligence or good faith in its multiple attempts to fulfill its statutory obligations. Trying to obscure Plaintiff's request for her full consumer file disclosure as a request for her consumer report and then manufacturing a dispute that they reinvestigated is nothing short of misleading and deceptive.

Plaintiff's allegation plainly show that Experian willfully violated 15 U.S.C. § 1681g(a)(1) of the FCRA by not providing the Plaintiff all information in her consumer file, regardless of how it is stored. Defendant acknowledges that it received Plaintiff's request, but chose to respond in a way that violated the FCRA. It has not escaped Plaintiff that Defendant chose to send Plaintiff a 10 page (printed on both sides of the paper, making it 5 physical pages) credit report instead of a

full file disclosure, which may consist of many more pages than a conventional consumer report. Furthermore, the Defendant is seeking to rely on the faulty argument that a consumer report is something that is sent to third parties and the same consumer report magically becomes a consumer file disclosure when sent to the consumer. Defendant points to a 2010 Alabama District Court ruling in *Pettway v. Equifax Info. Servs., LLC* to support its position on what the consumer disclosures are.

The court should note that nowhere in the FCRA is the term "disclosure/credit report" used. Defendant is confusing the terms to lead the court to believe that Plaintiff "received a consumer disclosure."[1] A credit report is a disclosure, of course…of credit information. That does not mean it is necessarily a disclosure of **all** information held in a consumer's file at a certain time. The plain language of the FCRA requires, among other obligations, that CRAs "clearly and accurately disclose" to a requesting consumer "[a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). FCRA states in its definition of the **"term 'file' when used in connection with information on any consumer**, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g). Emphasis supplied. Plaintiff's requests for her full consumer file disclosure was an attempt to obtain consumer **file information**, not just credit information, which is found in a conventional credit report. The fact that Experian sent Plaintiff a credit report does not equate to it complying with her request for a full consumer file disclosure UNLESS it had no other information in any of its files that relates to Plaintiff. If that is the case, why doesn't Experian just categorically state that it has no other information in its files relating to Plaintiff in its motion to dismiss to end the controversy right now? But Plaintiff asks, is it

---

[1] Quoting from paragraph two of Defendant's first footnote.

reasonable to believe that Experian collects and maintains consumer information on hundreds of millions of consumers but Plaintiff is somehow an exception and they have no other information whatsoever about her when she is a consumer, has auto insurance, has been to college, and has disputed a student loan being on her report past the statute of limitations? Is that plausible? Plaintiff's SAC specifically introduces information to show that Plaintiff's requests for her full consumer file came from a knowledge that there *does* exist more information than what is provided in an ordinary credit report. ECF No. 32 ¶ 40.

Defendant would have the court believe that Plaintiff is confused and making "nonsensical" assertions about her consumer file, which it erroneously maintains is her consumer report. Defendant's claim that "every federal circuit" has rejected "that the term 'file' includes all information on the consumer recorded and retained by a CRA" is misleading. Defendant relies on a few appellate rulings where the issue of "consumer file" and "consumer report" was muddled and argued inappropriately. Take, for example the following cases Defendant uses: *Gillespie v. Trans Union Corp*, in which the issue was whether a "purge date" should be included in a consumer report; *Shaw v. Experian Information Solutions, Inc.*, where the issue was inaccurate code information pertaining to a short sale on a credit report (the court stated that the code "information" in question "falls outside the bounds of a 'file' for purposes of § 1681g(a)) *Shaw v. Experian Information Solutions, Inc.*, Court of Appeals, 9th Circuit 2018; *Cortez v. Trans Union, LLC*, the plaintiff argued that Trans Union failed to disclose the HAWK and OFAC alerts in her credit report. The plaintiffs in these three cases were trying to advance the legal theory that the requirements under § 1681g(a)(1) applied to credit reports. This was inappropriate because requirements under § 1681c that govern credit reports have nothing to do with full consumer file disclosure requirements under 1681g. Other courts have recognized these differences.

In *Nunnally v. Equifax Information Services, LLC*, Equifax argued, and the court affirmed that a "consumer report" is "not the 'consumer's file' because [1681i(a)(6)(ii)] section states that the required 'consumer report' is based upon the consumer's file." *Nunnally v. Equifax Information Services, LLC*, 451 F.3d 768 (11th Cir. 2006). The District Court of Maryland made note of the 11th Circuit's reasoning in a similar case that involved a CRA's reinvestigation procedures that showed that there is a difference between the consumer report and consumer file. See *Alston v. Branch Banking & Trust Company*, Dist. Court, D. Maryland 2016. In another district court, they address the same issue. In *Clements v. Trans Union, LLC*, the plaintiff alleged that Trans Union failed in its duty to "conduct a reasonable investigation in response to any consumer dispute of information appearing on that consumer's credit *file*." (Emphasis in the original). The plaintiff's allegations were based on section 1681i of the FCRA. The court easily recognized that the "problem with Plaintiffs' position is that section 1681i does not apply to credit *reports*. It only applies to credit *files*. There is no requirement anywhere in FCRA that requires a consumer reporting agency to remove outdated information from a credit *file*." The court said further that it was "important to clarify that there is a sharp distinction between a credit file and a credit report. The two terms cannot be used interchangeably...in simple terms, the credit file is all the information about a consumer in the possession, custody, and control of a consumer reporting agency. A credit report, on the other hand, is only the specific credit information about an individual that is provided to a third-party." *Clements v. Trans Union, LLC*, Dist. Court, SD Texas 2018. The CRA's are aware of this distinction from their many lawsuits but choose to ignore it when it comes to a consumer's lawful request. This is a knowing, willful, and reckless disregard of the obligations Congress imposed on CRA's towards consumers.

**B. Plaintiff Lacks Standing Because the First Amended Complaint Does Not Allege a Concrete Injury.**

Defendant relies on snippets of *Spokeo* and *Dreher* to try to persuade this court that Plaintiff has suffered no real harm to establish Article III standing. Three things are needed to establish Article III standing: (1) there must be an injury in fact; (2) the injury must be fairly traceable to the offending conduct; and (3) it is likely to be redressed by a favorable judicial decision. Plaintiff has satisfied these requirements for standing. For example, in paragraph 22 of her SAC Plaintiff alleges that she was denied access to her file. In paragraph 40, Plaintiff alleges that there was additional information that Experian possessed and that there was a dispute regarding the accuracy of her consumer file information, particularly the student loan information.

In *Spokeo v. Robins*, the Court addressed in detail the components to an injury in fact. They said "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized." In order for "an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way." The Court said that "particularization" alone was not enough to establish injury in fact. It must be paired with concreteness; meaning real. They made an important note, however, that "concrete" is not necessarily synonymous with "tangible." They reasoned that "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo v. Robins*, U.S. 136 S. Ct. 1540 Supreme Court 2016. The Supreme Court remanded Spokeo back to the 9th Circuit to hammer out concreteness in the context of the judgment of Congress and history, which they did by zeroing in on the issue as to "whether Robins has sufficiently pled a concrete injury under the *Spokeo II* rubric." *Robins v. Spokeo, Inc.*, 867 F.3d 1108 Court of Appeals 9th Circuit 2017. The court acknowledged Robins argument that he should not have to "allege any additional harm caused by that statutory violation because FCRA exists specifically to protect consumer's

concrete interest in consumer-reporting accuracy." And if Spokeo's "alleged FCRA violations harm this real-world and congressionally recognized interest, he has standing to sue." *Id.*

In its deep analysis, the 9th circuit found that "congressional judgment" was necessary in determining the "concreteness inquiry," where a plaintiff suffers "an intangible harm." *Id.* Congress, in some instances, may "enact procedural rights to guard against a 'risk of real harm,' the violation of which may 'be sufficient in some circumstances to constitute injury in fact." *Id.* It was necessary then to establish "(1) whether the statutory provisions at issue were established to protect [Robins] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Id.* While Robins argued that any FCRA violation "premised on some inaccurate disclosure of his information is sufficient" for real harm, the Supreme Court rejected that argument saying that [i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* Since the Supreme Court "gave little guidance as to what varieties of misinformation should fall into the harmless category," the court focused on real life harms resulting from inaccuracies on a credit report that could impact Robins. The court said that "[i]t does not take much imagination to understand how inaccurate reports on such a broad range of material facts about Robins life could be deemed real harm." *Id.*

In Plaintiff's case, it also doesn't take much imagination to understand how not being able to examine her consumer file for accuracy, from which a consumer report emanates, when she has the superior interest in its accuracy and has a statutory right in making sure the contents of her consumer file are accurate. Being denied the right that Congress put in place to maintain

consumer and public confidence in fairness and accuracy caused Plaintiff to suffer a concrete and particularized harm—an injury in fact.

In conclusion, Plaintiff's SAC fully complies with the pleading requirements of Federal Rule of Civil Procedure 8(a) and gives Defendant fair notice of the charges against them and the grounds therefor. Plaintiff has sufficiently alleged harm by Defendant's conduct.

**WHEREFORE**, Plaintiff respectfully requests this court to deny Defendant's Motion to Dismiss SAC with Prejudice and if the court finds Plaintiff's pleadings defective that it will grant her leave to amend.

Respectfully submitted,

*/s/ Erien Frazier*

Erien Frazier, *Pro Se*

P.O. Box 25

Hagerstown, MD 21741

erienfrazier@gmail.com

(410) 262-8690

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the individual(s) listed below by first class mail, postage prepaid on this 23rd day of January, 2019 to:

Jon G. Heintz
Jones Day
51 Louisiana Ave
Washington, DC 20001

Scott E. Brady
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN 46077

Erien Frazier, *Pro Se*
P.O. Box 25
Hagerstown, MD 21741
(410) 262-8690
erienfrazier@gmail.com

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was served upon the individual(s) listed below by first class mail, postage prepaid on this 10th day of January, 2019 to:

Jon G. Heintz
Jones Day
51 Louisiana Ave
Washington, DC 20001

Scott E. Brady
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN 46077

Nathan D. Adler
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, Maryland 21202-3201

Erien Frazier, *Pro Se*
P.O. Box 25
Hagerstown, MD 21741
(301) 788-3898
jbakinfrazier@gmail.com